7006 from 2009, Henderson v. Department of Veterans Affairs DVA 7006 from 2009, Henderson v. Department of Veterans Affairs Mr. Stover, good morning to you. We'll hear your argument. Good morning, Chief Judge Michel. May it please the Court, Mr. Henderson is here today asking the Court to affirm its decisions in Bailey, and Jakeway, and Arbus, and Barrett, and Kirkendall. These are decisions that have a thread running through them. It is a thread that is common to the decisions of the United States Supreme Court in Irwin v. Department of Veterans Affairs, Stone, Brockamp, Bowles, and the John R. Sand case. That thread is the goal of each decision is to determine the intent of Congress with respect to the statute at issue. In this case, Mr. Henderson believes that the answer to that question, what is the intent of Congress, is relatively simple and straightforward, and can be gleaned from the fact that Congress has chosen over the last ten years at least to allow equitable tolling to be read into 7266. Counsel, do you believe the statute at issue is a time for review provision? I believe it is, as this Court has said in Jakeway, a statute of limitations. But our in-bank decision in Bailey said it was a time for review provision. It did, and Judge Dyke asked me that question when we were here back on June 5th. And he asked me whether Bailey had been overruled. And I think I'm going to modify my answer. I told Judge Dyke that it had not been overruled, and I agree with that. I continue to believe that. But I do think that the holding in Bailey, the reasoning in Bailey, has been questioned, because you're right. There is language in that decision which describes 7266 as a time for review statute. And I think to the extent that Bailey read 7266 as a time for review statute, that may be undermined by the decision in Bowles. But it has to be a timing of review section, because the Supreme Court was dealing with one whose language is quite similar to 7266. Well, Judge Lurie, this Court has held that 7266 is a statute of limitations, and I would agree with that. In fact, we were all here together when Jakeway was argued, and we spent a great deal of time covering that issue. 7266 is the first time that a veteran has the opportunity to engage the judicial system to review a benefits decision. Indeed, it's the only way a veteran can engage the judicial system to review a benefits decision. But that's true in the Stone setting as well, is it not? In Stone, which was said by the Supreme Court to be a time for review statute, the first time you see a federal court is on review, an APA review from the Board of Immigration Appeals, right? I think that in that situation you have two options. I think you can go through the Hobbs Act to challenge at the Court of Appeals. So I think you have two ways of going about that. I think the other important thing in Stone, and really the more important thing in Stone, is that the Court focused on the language there. And the language of the statute in Stone was very different from the language of 7266. Isn't the real heart of the question here whether you can distinguish 7266 from the statute in Bowles? Or to maybe put it a little bit differently, what's the breadth of the holding in Bowles? Either it covers you and you lose, or it doesn't quite reach you and you win. So you've got to tell us what you think the scope of Bowles is and why. Well, I will. But I'm not sure that I agree with your two choices. I'm not sure that if Bowles covers us, we lose. I think that the holding in Bowles did what the Court did in Rock Camp and Stone and Irwin. It took a look at the statute and it said, does this statute on its face preclude any extension of time? And what Justice Thomas did there is he said, look, you've got a 30-day time for appeal. And then you've got a 14-day window to come back and cure a problem if you miss the 30-day window. That doesn't exist in 7266. In 7266, you have 120 days. And what we know from Stone and what we know from Rock Camp is where Congress has not created exceptions to the time. That equitable tolling is presumed to exist in the statute. Again, I go back to the point that I made at the outset. Here, we are now 10 years down the road from the decision in Bailey, 11 years down the road from the decision in Bailey. Congress has had many opportunities to modify 7266 and, in fact, has modified it twice since that time. And in both instances, Congress elected not to either add a specific window of time like Rule 4.6 or Rule 4A.6 in the Federal Rules of Appellate Procedure, which was at issue in Bowles, and it has not elected to add language such like the language in, I'm sorry, I'm blanking, Rock Camp, about a time not to exceed. So I think we can divine pretty clearly from Congress's action here that Congress believes this Court is right. You go back before, Bailey, they had dropped out the good cause section, however. They had. That's right. You're considering the legislative intent. I'm always very uncomfortable talking, attributing very much to congressional inaction. But it's not inaction, Judge Rader. It's not inaction. They've modified that specific section on two separate occasions, and there's a long line of authority in the United States Supreme Court and, indeed, in this Court that Congress is presumed to legislate with knowledge of this Court's decisions in mind. And, indeed, this Court said in the OJA opinion that it's up to Congress to take on the burden of modifying a statute with respect to time limitations that this Court has reviewed. And so I'm not sure that we're reading something into Congress's inaction, Judge Rader. I think we're actually looking at Congress's action and saying it should be clear, congressional intent should be clear. How does your statute compare with the MSPB appeal provision? That was in OJA, right? That's right. That was in OJA. So what's the comparison between the OJA statute and your statute? In the OJA situation, the statute has some very clear language that doesn't exist in 7266 about an appeal not to exceed a time limit. So it's like Brokamp. It was more like Brokamp. That's right. That's right. If you had a situation where someone was counseled going to the Court of Appeals for Veterans' Claims, does the tolling rule that you're arguing for apply in a counsel case? Just so I'm clear, I understand the scenario. The veteran has counsel at the time he or she files a notice of appeal. Yes. Yes, it does. It does. There's nothing in the jurisprudence that I've seen that would suggest that equitable tolling doesn't apply in situations where an individual is represented. Suppose we have an incompetency situation and the notice of appeal is filed 30 years later. You're saying that equitable tolling would apply to the whole 30-year period? I'm saying that the Court should consider whether or not equitable tolling applies. Well, assuming that the veteran were incompetent for the whole 30-year period. If a veteran were incompetent for 30 years and 30 years down the road came forward seeking benefits, I think the Court would need to take a look at the standard that it has set out in appeals like Jakeway and like Barrett and like Harvest and make a decision. Why in your theory wouldn't there be equitable tolling for the 30-year period? There may be. There may be. If the factors, if this Court reviews the factors and determines that equitable factors mean that the statute should not run for that period of time, there may well be equitable tolling. So if the Court concludes, and there has been some discussion already this morning about this, but if the Court concludes in bank that 7266 is a timing of review provision rather than a statute of limitations provision in the wake of Bowles, I take it your position is that you still do not lose. That's correct. Okay. Now why do you not lose if the Court concludes that 7266, let me say this, why in the wake of Bowles do you not lose if the Court concludes that 7266 is a timing of review provision? Because Bowles focused on a specific statute and rule. That is 2107 and Rule 4A of the Federal Rules of Appellate Procedure. And as the Court is aware, 2107 and 4A say that an appellant gets 30 days to file a notice of appeal from a decision in a district court. Final judgment. The language of 2107 said no appeal shall bring any judgment unless notice of appeal is filed within 30 days. Shall bring, of course, is in the negative. Whereas 7266 is in the positive. A person shall file a notice of appeal. I both use shall. They're quite similar. They are similar in that regard. Where they differ is that Rule 4. So if the decision of the Supreme Court based on 2107 was what it was, why isn't it directly analogous to one involving 7266? The reason it's not, Judge Lurie, is because, as you know, Bowles focused on a situation where an individual missed the 30-day window, asked for the additional 14 days. Bowles was a fortiori. I mean, there was a district judge that said you've got an extension of time. That's right. And the court overlooked that. Well, what the court said is that where you have a period of time set out in statute with a specific exception or extension to that period of time provided, then you get no more time. We don't have that situation here. I think there's another important distinction. And then, Mr. Stover, that because there's not the exception in 7266, we just have a 120-day period, that's what gives you your daylight in the wake of Bowles. I think there's two things, that and the fact that what we're talking about here is not an extension of time. What we're talking about here is tolling. There are two different concepts. Tolling, of course, means that the statute stops running. An extension of time means that the statute has run and you get additional time. We are talking about a situation where the statute stops running. Isn't there a third difference, too? This really isn't an appeal. This is not an appeal similar to Bowles or as a federal district court, Article III court, to another Article III court. This is the first adversarial process. Up to that point, it was a non-adversarial, administrative, presumably paternalistic, blah, blah, blah, all this stuff that we've said. This is the first time. Not blah, blah, blah, Your Honor. With all due respect, this is very important to my client. Well, I know it is, and it's very important. But the point I'm making is this is totally dissimilar from the Bowles situation. I agree completely, and I think that it's an important distinction to make because this is the first time. 7266 constitutes Congress's waiver of the government's sovereign immunity against suit from veterans of this type. And as Irwin tells us, when the government chooses to waive its sovereign immunity like this, equitable tolling exists. There's no other place for a veteran to go if they disagree with a decision about claims benefits. And so you're exactly right. This is different from Bowles in the sense that Mr. Henderson has not had a chance to engage the judicial machinery at this point. He has been strictly within the process in the executive branch, and this is the first time that he gets the benefit of judicial— Well, is that merely a factor, or is that the winning card in the poker game? Is that enough by itself? That this is the first time, or is it just one of several factors to weigh? I think it's one of several factors to weigh. Looking at this in the context of Bowles, should an Article I court have more equitable power than an Article III? You know in Doneto, the Supreme Court said this rule applies with added force to Article I tribunals, the jurisdictional cutoff rule. Added force seems to suggest Article I courts have a little less equitable power than Article III. And Bowles has added force to Article I courts as opposed to Article III. Well, of course, Bowles was in the Article III context, and Justice Thomas had no discussion there about what the direction would be in Article I courts. But Doneto said added force. I agree, Your Honor. I agree. But Bowles was in the Article III context, and of course, we can only take the Supreme Court at its word. The Supreme Court has made very clear in its decisions that we do not overrule a line of cases unless we say we're doing it directly. The Supreme Court was presumed to be aware of this Court's decisions in Jakeway and Bailey, certainly aware of the decision in Irwin. The dissent in Bowles raised Irwin, and Justice Thomas didn't address it anywhere in his opinion. So while Doneto may be – I understand your point about Doneto. But Irwin requires a private analog for a public equitable action. Did Bowles remove that obligation? I am not sure that that's – I'm not sure that I agree with your analysis. I think Irwin says that the government submits itself to suit in the same way that a private party would, and I'm not sure that it's necessary to have a private analog. I think that you can say that equitable tolling exists in this context, even though there is no private analog, for the very reason that Judge Mayer raised a moment ago, and that is, again, this is the first opportunity that a litigant can appear before a court. Well, again, though, that was true of Mr. Stone, right? He was before the executive branch. He was. Until he got to the Court of Appeals. And the Court said that statute governing the appeal to the Court of Appeals was a timing of review statute, and then added that in the case of timing of review statutes, writing very broadly, the time limits are mandatory and jurisdictional and are not subject to equitable tolling. To me, that's the biggest hurdle for you to get over. Because if this is a timing of review statute, notwithstanding your argument that it's possible for a timing of review statute to be equitably tollable, it sounds like that language is a problem for you. Well, again, I'd say two things in response to that. One, I think this Court has already concluded it's not a timing of review statute. It's a statute of limitations. Jake Way is clear on that, and the analysis of Jake Way— You touched on Bailey, and Bailey's in question because of Bowles. So you're begging the question. Well, I'm not sure that I agree with that, Judge Rader. I mean, certainly Jake Way follows Bailey, but I think the analysis in Jake Way is much more focused on the issue of statute of limitations. I mean, that was certainly the way that we briefed that case, and that was the way the argument in this Court went when Jake Way was up. Well, but how do we dismiss the Stone like that? Well, and that's what I'm getting to. I think, again, the Court in Stone focused on the issue of what does the statute say, and on the basis of that, reached the conclusion that equitable tolling doesn't exist for Mr. Stone because the statute, the INS statutes at issue precluded it. So if—I go back to the point. If 7266 is a timing of review statute, it is still susceptible to a reading that includes equitable tolling by virtue of the fact that the language is broad enough to allow for equitable tolling and by virtue of the fact that Congress has chosen not to change any of the decisions that this Court has taken with respect to the statute. Do you think we can take into account things like the fact that—I think it's a fact— a very large majority of the litigants before the Board of Veterans' Appeals are not represented by an attorney and that that proceeding probably couldn't fairly be characterized as a normal adversarial proceeding analogous to what goes on in the district court in a typical case. And also the fact, I mentioned earlier, that some of the veterans are severely disabled even while they're still in the process. They may have filed their claim with the R.O. ten years earlier and become much worse, mentally or physically or both, by the time the Board acts. So now the 120-day clock is running, but I, the veteran, am now incompetent and unrepresented. Are we allowed to take those kinds of things into consideration in this case? And if so, on the basis of what authority as opposed to the more cold-blooded analysis of both? Well, Judge Michel, as you know, the Supreme Court has said on numerous occasions that the veteran system is designed to be benevolent and paternalistic, and I think that's the authority. And indeed, that's the authority Your Honor used in his concurrence in Jakeway— pardon me, in Bailey. I think that that is—I think that's sufficient authority. And you're absolutely right about the state of the litigants here. And this goes back to Judge Mayer's point about the fact that this system is just different and that this is the first time in what is a benevolent system, a system in which Mr. Henderson, at least, and most veterans up until 2007, were completely unrepresented because attorneys—they could not have attorneys by statute— first come into contact with a judicial system where there are time limits that have jurisdictional implications and so forth. And given that, it's very much like a filing of a complaint. What about the language in Bowles? If we take the statute in Bowles or what might be viewed as strictly the holding of Bowles, you have a much stronger case. But if we give full faith and credit to some of the language in Bowles, you're climbing a much steeper hill. This raises sort of a philosophical or jurisprudential question, I guess, of, you know, we often will ignore what can be fairly characterized as dicta in a precedential opinion of our own or another court of appeals. But maybe it's a little bit different with dicta or even footnotes in a Supreme Court opinion. Maybe the court of appeals is much less free to ignore the implications of language in an opinion, including its footnotes. What do you say about that? Well, I say a couple of things. I think Your Honor is referring to the language in Bowles where Justice Thomas says, today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement. There's a couple of things. First, that language— Before you finish off on that sentence, the next sentence is the one that bothers me more than the first one. The unique circumstances language, because that's where we're trying to fit it in as far as having the VA process being unique. Now, is that language restrictive on us, trying to determine unique circumstances for equitable code? What Justice Thomas was referring to here is the unique circumstances doctrine that was articulated in the Harris Truck Lines case and a subsequent case. It's different from equitable tolling. It's a distinct doctrine, let me put it that way. The point that I was going to make, Judge Gajarza, is that this sentence has to be read in context. And it has to be read in the context of the rest of that paragraph, which goes specifically to the unique circumstances doctrine. And we are not here arguing that the unique circumstances doctrine applies in this case. It's a different doctrine with different requirements. Isn't that the point about veterans? The paternalistic attitude toward veterans, isn't that a unique circumstance? It is a unique system. It is not a unique circumstance. And I think that they are two distinct ideas. I cannot imagine that Justice Thomas, in this opinion, intended to overrule the long line of cases about the way in which the government should treat veterans. I don't see anything in this opinion that would suggest that. And I see my time is running out. I'd like to reserve the rest of my time for it. May it please the Court. 7266 sets forth a statutory time to appeal. When Congress enacted it, it enacted it against what Bowles describes as the backdrop of over a century of precedent that statutory times to appeal are mandatory and jurisdictional. As such, Bowles controls this case. It requires this Court to revisit and overrule this Court's decisions in Bailey and Jackway that would permit a quote-unquote pulling of 7266. What about the argument that at least a portion of Bowles suggests that the Court was persuaded by the particular statutory scheme there and the fact that they had a reopening provision, and they used the words because Congress specifically did it the way they did in that statute, that compels the result here. Why isn't that a fair distinction between that statute and our statute? Well, because I don't think that's the primary point of their analysis. I think that's a subsidiary point of looking at that particular statute and looking at the context of that particular operation of 2107. But Bowles starts off in his discussion with very, very broad language. This Court has long held that the taking of an appeal within the prescribed time is mandatory and jurisdictional. It goes on throughout this opinion to state a very broad rule and note the age of this rule. So, yes, they spoke in terms of the extension of time in 2107. They do that in many cases where they examine particularly whether a statute of limitation as opposed to a time of review provision is jurisdictional or not. But the further point I would add, Your Honor, is that, yes, that may be additional support for why you shouldn't toll a particular time period, but the lack of an extension shouldn't be necessarily an indicator that Congress meant to imply an extension, particularly for a time of review provision. If Congress wants to create a statutory time of review provision, such as 120 days, and not provide any extensions to it, it certainly has the authority to do so. And that's what it did here. It said you have to file an appeal within 120 days. The fact that it didn't give an extension is just an indication of the fact that it didn't intend for there to be any exceptions, equitable or otherwise. Judge Bryson? Do you think that the inclusion of this case, as you see it, in the category of cases in which the timing of appeal statutes are implicated, is attributable to the fact that Congress simply chose the word, well, at the time, and said there's a notice of appeal, or is there more substance to the fact that it's an appeal in the traditional sense? The reason I ask that is because in a non-statutory review proceeding in the APA, for example, you go to a district court, and that's not an appeal, but what you're doing is you're reviewing an agency action on the agency record, and yet that would be governed not by the statutes of appeal type rule. So why isn't this more like that than it is like the statute that's at issue in Bowles? Well, first, I think because it is important that Congress created the Veterans Court as a court of appeals. But you don't really think that when they picked the name appeals, they were thinking, aha, the reason we're going to choose this name, court of appeals, is because we want to have a no equitable tolling rule with respect to the notice of appeal. Well, I certainly wouldn't impart that kind of detailed intent on Congress. What I would say is when they create a court of appeals and say this is a time to appeal, and then looking at the system in its whole context, that the court of appeals is a court of appeals, then— Reviewing final agency action in an APA proceeding. Well, first of all— Which isn't a court of appeals, right? It's not a court of appeals. It's not called a court of appeals. It's not acting as a court of appeals, even though it's reviewing agency action. That's what the CABC does when it reviews the B.I. at Board of Veterans' Appeals, right? Right, but the structure of this system where an initial claim is filed in an RO, the fact finder is the RO in the Board of Veterans' Appeals, then you have an appeal to a court of appeals, and then a much more limited review by this court and discretionary review by the Supreme Court renders the Veterans' Court, the Court of Appeals for Veterans' Claims, the primary appellate body. If they weren't an appellate body, given this court's very limited appellate review on veterans' places, veterans wouldn't have appellate review. Isn't it the same as what Judge Gershom was saying when it goes to the district court on these administrative reviews? It is the executive branch that's acting in these B.A. cases. It's a non-adversarial process. The board acts for the secretary. The ROs are employees, first of all employees, but are employees. It's not an adversarial adjudicatory process. It's executive action. This is the first time a judicial review, judicial consideration arises. This is in the district court situation. Well, yes, Your Honor, but again, that doesn't mean that the court of appeals is not a court of appeals. And I don't mean to be too simplistic about that, but the other answer to that question is stone, where again, that's the first time at a regional circuit that a case is reviewed in federal court. But prior to that, it's in the executive branch. This court's decision in OHA, the MSPB case, is very analogous as well. Isn't Judge Bryson's argument really the same as Justice Ginsburg's dissent in sand and gravel? It's pretty close. In other words, the Supreme Court, if I read that dissent correctly, rejected that argument. Didn't it? I think so, yes, I think so. I mean, sand and gravel is helpful for us to the extent that it really stands for the proposition that, you know, Congress shouldn't be intended to kind of sub salientio, overrule, you know, hundreds of years of precedent, holding a certain time period mandatory and jurisdictional. Sand and gravel dealt with the statute of limitations, though, not with a timely review provision, and it involved the government and sovereign immunity. Bowles doesn't necessarily involve those questions because Bowles holds that for all parties, private cases between private litigants and cases against the government, there is no tolling, or there's no equitable exceptions. It wasn't tolling. It was the unique circumstances doctrine, but there's no tolling. You said we had to overrule a long list of our cases, but you didn't mention Irwin, which was the Supreme Court, which was what the basis of these cases were. Bowles didn't mention it either. So how do you get around that? Because Bowles applies to timing of review provisions. Irwin applies to statute of limitations. Bowles clearly didn't overrule Irwin. Justice Souter in dissent in Bowles specifically raised the notion of Irwin and the fact that argued, I believe, that Irwin was inconsistent with the outcome, that they had made all timing review provisions subject to a presumption of equitable tolling, the same rule that this Court inferred from Irwin in Bailey. Although Justice Thomas didn't address that argument head on, certainly the clear implication of Bowles is to reject that argument and hold, therefore, that timing of review provisions, statutory periods of appeal to courts of appeal, are different than the statute of limitations covered by Irwin. And that's the rule that we take from Bowles and how we read it in congruence with Irwin, which is still good law. Mr. Hughes, pardon me for asking what may be a totally irrelevant question, but what's the grave harm to the government? I mean, if an appeal is filed 170 days instead of 120 days after the Board of Appeals' decision, which may be five to ten years later than the filing of the original claim at the RO, what's the harm to the government that there's another couple months of delay? Well, to be candid, Your Honor, in the individual case, I'm not going to be able to argue to you that there's a huge amount of harm. But the importance of it is this system-wide structural importance that the Board knows when a case is finished and when a time for appeal has run, that the decision is final, and as well as the Court of Appeals for Veterans Claims. Of course, the more important answer is that Bowles makes those time periods jurisdictional. So, harm or not, under Bowles, the Veterans Court simply does not have the authority to act to entertain that appeal and equitably extend a mandatory and jurisdictional time for appeal. Your answer should be that under this theory you could have tolling for years, which could create substantial problems. Well, yes, Your Honor. I was trying to respond directly to the Chief Judge's hypothetical about 120 days versus 170 days. It's very hard, I think, for the government to make out a case that 50 extra days is harm. Absolutely. That was what I think I was trying to get at, is that when I said more broadly the BVA is entitled and the Secretary is entitled to be able to rely on the finality of a decision when it becomes final, and if it does allow equitable tolling for 10, 30, however many years, that is a harm even in a specific case. Does it matter that these cases rarely rely on memory of witnesses, the records amassed in the RO, medical exams by VA medical center physicians and so on? My recollection, at least, is that the evidence is pretty well fixed and frozen and documented fairly early in the process, so that often when equitable tolling is resisted, it's on the basis that, well, if we have a delay, memory is going to fade and we won't get a fair result. We won't really be able to reconstruct what the truth was. But to the extent that these cases are mostly file review cases, that doesn't seem to be a serious concern here. So are we allowed to weigh that, or is that another consideration that Bowles just shuts the door on? Well, I think the first answer is Bowles shuts the door on it because it's a jurisdictional period. But even if you did weigh it, I don't think I would concede that these are strictly file review cases. Of course, the Veterans Court is reviewing them as a file review case because it's an appellate court and appellate courts review everything on the record. But in many instances, what the Veterans Court does is look at a case, entertain a claimant's argument that something wasn't properly done or more evidence should have been developed, and sends it back. And if, indeed, 15 or 20 or 30 years has elapsed between a certain diagnosis by a physician or any other kinds of factual events, there is going to be the same kind of harm that results from the elapse in time in a veteran's case. But in those cases where there's a harm because of the delay, that would be a reason for the court to deny equitable tolling because the government will make the argument. We'll be badly prejudiced. We can't prove our case. The witness is now dead. So it doesn't mean tolling shouldn't be on the table. It just means in a given case where there'd be great harm because, for example, a witness has disappeared, that that would be a basis for declining as an equitable matter the tolling result. Is that right? Does that satisfy that concern? Well, but that presumes, then, that every time limitation of that analysis should be subjected to it. And, frankly, every time limitation, including times for appeals to this court, times for appeals to the Supreme Court, and the like could be subject. Well, is it really a lot of harm here or not? And if it's harm, we'll reject it as untimely. But if it's no harm, we'll let it go forward. That's not the rule that the Supreme Court established in Bowles. That's not the rule that this court applies. Yeah, but the question is whether the exercise of discretion can't accommodate the concern where a witness disappears or documents disappear or other prejudice of that sort. It perhaps could on an individual basis. But, again, that's not a sufficient reason to depart from the very clear precedent in Bowles. Mr. Hughes, what in Bowles gives us a more compelling reason to reject equitable tolling than we already had in Stone and Missouri? Stone and Missouri said much the same thing. We rejected that in Bailey. What in Bowles should change our mind? Well, two things. First, Bowles is about as emphatic as you can get in terms of language about these appeal periods being mandatory in Georgia. Stone is pretty emphatic, as Judge Bryson read to us earlier. Right, although I'm not going to quibble. I think that Stone and Missouri should have been good enough. But Irwin did come after those cases, and Irwin perhaps did create a viable argument that it changed the state of the law. The government certainly wouldn't agree with that position. But now that Bowles has reissued reclarifying, at the very least to our view, that Irwin doesn't apply to time of review provisions, that would be the main factor, I think, that would make it stronger. But I'm not going to argue with you at all that the government's view was that Stone and Missouri were certainly good enough precedent to hold that equitable tolling shouldn't have applied to 7266 at the time of Bailey. I just had two questions. You got up at the start of the argument, and you stated it was your view that Bowles had undermined our decisions in Bailey and Jacquet, correct? Is that the extent of it? In other words, is it your position that those are the only cases that Bowles has undermined? Do you have any other cases? Lines of jurisprudence in the court that, in your view, were underlined by Bowles? Well, I don't want to give you a parade of horrors. No, I understand. I'll put my cards on the table. Kierkegaard. Do you think Kierkegaard was impacted by Bowles? Yes, because Kierkegaard relied on Bailey. But I don't think that, which we believe is undermined by Bowles, but overruling Bailey does not automatically require overruling Kirkendall. Kirkendall is a different factual situation. It's an appeal to the MSPB. There's different statutory language. I think in an appropriate case with appropriate briefing, that is a question that has to be decided. But I don't think that overruling Bailey and Jacquet automatically requires overruling Kirkendall. I would say that there is a number of other panel decisions following Bailey and Jacquet in the veterans context, relying on Bailey and Jacquet, that would no longer be good law as well. They're just kind of giving more detailed analysis. If that was the case, that would be something that this court would recognize in subsequent panel decisions. That's correct, Your Honor. And mostly the two cases that come to mind in that instance are Barrett and Arbus, involving whether mental incapacity can toll or not, and certainly if no tolling is allowed, then those cases no longer are good law. The second question that I just want to ask, and then I won't press you any more on this. The second question I want to ask was this. Mr. Stover said that even if one accepts the proposition that 7266 is a timing of review provision, he can still prevail. And you recall his arguments in response to that. He said that the language of 7266 is different. It's not like the language that was at issue in Bowles. What is your response to his comeback or his position that he still can win even if 7266 is a timing of review provision? Well, twofold. First, I don't think Bowles allows him to win on that. I think Bowles is very broad in its scope, that all statutory appeals periods are not subject to apparel exception. To the extent that that's dicta for language other than 2107, that's very strong dicta that this Court should follow. As this Court noted in, I believe, Stone Container, it's not free to disregard dicta from the Supreme Court when it's fairly clear. But second, even if we do get into the specific language distinctions, Bowles didn't rely on the specific language distinctions. It certainly discussed that language, but it doesn't rely on it. And indeed, if you compare language in the various timing of appeal provisions that are out there, the universe of them, a lot of them look a lot more like 7266 than 2107. If you accept that there's some kind of more mandatory nature in 2107, that shouldn't be enough. The appeal period in veterans' cases to this Court in 7292 uses very similar permissive language like 7266. Likewise, the language in the rule that allows petitions for cert in civil cases to the Supreme Court is also very permissive in nature, much closer to 7266. And certainly the Supreme Court has very, very emphatically held that you can't toll the time to file a cert petition. They readdressed that issue in Bowles and, in fact, noted the very harsh consequences that arises from their own harsh or strict application of a timing of review provision in cert cases. Let me ask you one hypothetical before you run out of time. Let's suppose we have an incompetent veteran, that is, one who is incapable of managing his own affairs. Let's assume that the Veterans Administration knows that, that he's incapable of filing a notice of appeal on time. Is there any obligation on the part of the Veterans Administration to assist that veteran to make a timely filing of a notice of appeal, or can the Veterans Administration just say, too bad, it's not our problem? I don't know the answer to that, Your Honor. There may be some kind of statutory requirement that if the Secretary of Veterans Affairs is aware of the incompetency of a veteran, they may be required to assist in the appointment of somebody to aid that person. I vaguely recall that there's something out there on that. I would have to provide some supplemental briefing on that specific point, but that would be a statutory requirement. It wouldn't be any basis for an equitable exception. Well, if there were a statutory requirement or a violation of a statutory requirement, perhaps that would result in some sort of tolling at the time for appeal. No? No. I think what would happen is if they violated a statutory requirement, it would render the decision not final. For instance, the Veterans Court, not specifically to this point, but analogously, the Veterans Court has held in a line of cases that because of the duty to, in 7104, I believe, to give a notice of the board's final decision and various appellate rights and the like, that if that notice of final decision is not sent to the veteran, the board decision is no longer final, and that's because of that statutory violation. Although I don't want to concede a big point for the Secretary right now, I could see a similar argument being made if they had a statutory duty to appoint somebody to watch out for the veteran's interest and they fail to notify that person, then that decision, the board's decision might not be considered final. It wouldn't be tolling. It would be a non-final decision. Mr. Hughes, have you read the Supreme Court oral argument in the Bowles case? I did, Your Honor, but it's been quite some time. And how about the brief? Did you read the Supreme Court briefs filed in the Bowles case? I can't tell you, Your Honor, if I did or not. I seem to think I did. But, again, if I did, I'll be honest, it was not in preparation for today's argument. Well, the reason I ask is that both you and Mr. Stover have asked us to accept certain presumptions about what Congress intended when they did do this or didn't do that. And I'm wondering if we're implicitly being asked to presume that the Supreme Court intended in the Bowles ruling to cover the veteran's regime. There's nothing in any of the opinions that suggests that, so I was just wondering if anybody ever even mentioned it in the briefing or the oral argument. Is there any reason anywhere to believe that any one of the nine justices had in mind in the course of considering and deciding Bowles anything about veterans? I'm not aware of that, Your Honor, but we are not asking you to decide that the Supreme Court intended to affect veterans' cases. We are asking you to interpret congressional intent at the time of the enactment of 7266 in the BJRA. When Congress did that, when they enacted a 120-day time for appeal to an appellate court without further exception, without a good cause exception, they were doing so, first of all, in light of 100 years of precedent, saying those kinds of appeal periods are mandatory and jurisdictional, and also pre-Irwin, where there wasn't even a question of whether something like that could be told or not. So that was the congressional intent in 1988 when Congress enacted the BJRA. So then Bowles is not even necessary to your position. I thought the whole reason we were here is because Bowles was viewed as having changed everything. Bowles clarifies that Irwin doesn't cover statutory timing of review provisions. That's been the government's position since the enactment of the BJRA. That was our position in Bailey and has been our position since then. This court, of course, rejected that position in Bailey and in Jacque. Bowles gave us an opportunity to revisit it. But it's not that it changed the landscape. It clarified the landscape between timing of review provisions and statute of limitations and whether statute of limitations can be told against the government. And it's really important to recognize that Irwin is, in a way, a very limited decision. It is not about whether statute of limitations at large can be told or not. It is about whether against the government, when sovereign immunity is in play, whether a statute of limitation can be told. That wasn't the question, or we believe shouldn't have been the question, in Bailey. So you think that it's a legitimate function for the government to keep coming at us until you wear us out. These arguments have all been made in light of what you just said. They've all been made over and over again and been rejected, as you just said. And any time you see something that you might be able to hook, you're going to come back at us. Well, yes, Your Honor. Although, to be fair, to be fair, we did come back at you. It seems like a pretty strange approach for the federal government. Well, I want to be candid with you. Bowles certainly represented an opportunity to renew our argument. We didn't make this position. We didn't come back at you. The Veterans Court itself undertook to look at Bowles and decide whether it should revisit this question, and it did. And we had to make our best legal argument, and we have made our best legal argument. In the intervening time, we have not continuously told you that Bailey is wrong. We've tried to follow Bailey as best as we could, both here and at the Veterans Court. But, yes, when intervening Supreme Court precedent calls into question precedent of this court, I think we're obligated to make sure that your precedent is consistent with what— Is that your point? I can't tell you the exact procedural history. I know that Mr. Henderson filed an untimely notice of appeal. It was originally rejected, I believe, because the court found that equitable tolling just shouldn't apply factually, and then they issued a show cause—there was a reconsideration motion, and then Bowles came around and they issued a show cause order or something of the like to brief whether Bowles should apply to that. And then the Veterans Court made the decision, I believe as an en banc court, and decided that Bowles applied. In light of the history of congressional attempts to enhance protections for veterans, I'll make a rash prediction that if we accept your argument, that Congress will change the statutory time limit for filing appeals for the Court of Veterans' Appeals from 120 days to two years. Well, Your Honor— So maybe this is all kind of futile. If Congress does that, that's Congress's role and Congress's responsibility, and the Secretary would certainly be happy to live with those results. I mean, that's Congress's call. We have to do what Congress says. In this case, Congress said it's 120 days until Congress provides some kind of— Well, didn't Congress say that equitable tolling is just fine when they revised the statute twice in light of the long line of cases you wanted to abrogate? No, Your Honor. First of all, that notion of acquiescence by silence is a canon of construction that is at best a weak one. The Supreme Court has noted that itself on many occasions. But if you look, it's particularly weak in the facts of this case. First, the statute, as enacted, was pre-Irwin. It had to be construed as a timely review of mandatory provision at the time it was enacted. The subsequent amendments never really dealt with that specific subject to the extent it did when Congress enacted the mailbox rule. It specifically, in the legislative history enacting the mailbox rule, noted that that time limit was jurisdictional. One of the reasons for enacting the mailbox rule was because of the harsh results of a jurisdictional statute, the fact that veterans were located far from D.C., and allowing them the additional time from mailing to receipt to comply with that statute. So, no, that acquiescence doctrine, to the extent it has any viability, really doesn't have viability in this case. You know, only lawyers can engage in such fictions as we engage in, where we presume that Congress knew all about all the case law, and therefore when it legislated and said this or that or the other thing, that we know that they meant what we're now saying they meant because they didn't say otherwise, it just seems awfully far-fetched to assume that when Congress passed this statute, or I guess twice subsequently amended it, that it had any view one way or the other about whether equitable tolling was going to apply in justified circumstances. So it's just sort of discouraging to me that we play this game of categories. Is it a statute of limitations or is it a time of review? Is Congress to be presumed to have understood this or understood something else? The truth is, there's no evidence that they had this in mind at all. Well, I would agree with you. Defying Congress's intent without anything more specific in the legislative history is difficult, except for the fact that we look at the plain language. And the plain language of the statute says you have to take an appeal within 120 days. If we take Congress at its word, it meant 120 days. It didn't mean 120 days with a good cause exception. If it wanted to put in a good cause exception, as it did in statutes like 2107 or other statutes, that was Congress's role. That will be the amendment. I'm not going to disagree with you about that, Your Honor. So for these reasons, the reasons in our brief, we respectfully request the Court to affirm the decision of the Veterans Court. Thank you very much, Mr. Stover. You have about seven minutes. Thank you, Your Honor. I'd like to make three points. The first is I'd like to turn to Judge Dyke's question about hypothetical situations where the VA may or may not have a duty to act. What we do know is that if Bowles controls, if equitable tolling is read out of 7266, that in a situation where a Veteran goes to the VA and hands the VA a notice of appeal on the VA's form for that document, and the VA representative says, I will take this and file it for you, and then puts it in a drawer and lets the time run out, we know that in that situation the VA will win. The Veteran loses. He does not have an opportunity to have his case heard. We know that because those are the facts of Baylor. We know that if a Veteran sends a motion for reconsideration of a BVA decision to the VA's regional office, and the VA regional office just kind of puts it in a drawer and sits on it for three or four months, that the Veteran loses. He will never get an opportunity to have his decision reviewed on the merits, and we know that because those are the facts of Jaguar. So the hypotheticals that you pose, Your Honor, are right on, that if equitable tolling is read out of 7266, the Veterans will lose, and the VA will have in its power the ability to construct a situation where the Veteran's claim is simply overlooked, is simply passed over. Of course, the prisoner in Bailey lost habeas corpus. I hope you are not bold. I'm bold. That's even more astounding, isn't it? And yet that's what the Supreme Court said. That is indeed what the Supreme Court said. Different system, though. The individual in Bowles had a trial, had a jury that found him guilty, had an opportunity to appeal that decision, then filed in district court a petition for habeas corpus. In this case, we're talking about the Veteran's very first and only opportunity to have judicial review, and the VA can basically squash it. So that's point number one. Point number two, there was a question, and I think Chief Judge Michel, you asked it. You know, what's the harm here? What's the harm to the government? And the question I would pose is the other way around. What's the harm to the Veterans if we read equitable tolling out of 7266 and let Congress take action if they really wanted to be there? Well, the harm is this. Mr. Bailey, pardon me, Mr. Henderson, another client of mine, about 60 or 70 different cases pending currently before the CAVC waiting for a decision in this case. All of those Veterans, and probably a couple hundred others, will never have an opportunity to have their case heard on the merits, even if Congress corrects and writes equitable tolling into the statute in the next legislative year because time is going to pass and these claims will be allowed to be dismissed and they will never have an opportunity to review. Now, if the government is serious and they don't want equitable tolling to be in 7266, then I would suggest that the Department of Veterans Affairs has in its power the ability to drive up to Capitol Hill and sit down with a few senators and members of the House and argue to them that equitable tolling ought to be specifically excluded out of 7266. So the harm, I think, is to the Veterans, not to the government. Would you be satisfied with a narrower version of equitable tolling, which would depend on a showing by the Veteran that the Veterans Administration had an obligation to do something such as deliver his notice of appeal for him when they promised to do it and didn't do it as opposed to what is perhaps broader equitable tolling that's available under Irwin? The concern I have with that is that we have a situation here in this case where Mr. Henderson, who has received a 100% disability rating because of schizophrenia, paranoid schizophrenia, was unable to file his notice of appeal for the very thing for which he is seeking benefits. Now, he did not go to the VA, and the VA did not tell him, we'll file your document or anything like that. He's just sick. And his doctor said he was sick, and his doctor said he was too sick to meet the deadline. And in my view, that should be a basis for the tolling of the statute of limitations. So your hypothetical doesn't allow for that. I certainly think in the facts that you've just described, Judge Dike, equitable tolling should apply. But I don't think it's the only place. The last point I wanted to make was with respect to this issue of what did Congress intend. I didn't hear anything from the government other than the notion that acquiescence is a very weak canon of statutory construction that really countered the fact that it's been 10 years. It's kind of remarkable, in fact. I thought about this yesterday, that it's been 10 years since the decision in Bailey. And not only has Congress not acted, but as far as I'm aware, the Veterans Administration hasn't acted either. They haven't gone to Congress and asked that the statute be changed. So maybe the acquiescence isn't just Congress's. Maybe it's also the VA's. I also want to be clear about something. I don't think that this is so much acquiescence as it is actually saying, you know, we understand that this doctrine of equitable tolling is out there. We've changed the statute in significant ways on at least two occasions since the doctrine was read into the statute. We're not going to change it. We like what the Federal Circuit has done. I think that is every bit as reasonable a reading of what Congress has done here, and is certainly supported by the case law from this court and from the Supreme Court, than saying, well, you know, Congress is busy and maybe they don't know or maybe they do know. I mean, the statute, pardon me, the case law is pretty clear. Again, from this court in OJA, from the Supreme Court in cases like Young and Sand and Gravel, that where Congress legislates with respect to, or changes rather, a statute with respect to the timing of a filing, it is presumed to know how the courts have applied that statute. Mr. Stover, a point of interest not relevant to the decision, but just a matter of curiosity. Is your representation of the veteran Henderson pro bono representation? Yes, Your Honor, through the Veterans Pro Bono Consortium. I think you're to be commended for doing that and for arguing the case very skillfully, as also did Mr. Hughes on behalf of the government. We're happy to have such a good representation in an important case. We'll take the case under advisory. Thank you, Your Honor. All rise. The Honorable is adjourned.